## BIBB AND FALKNER, Ex'rs, vs. AVERY, Adm'x.

[ACTION ON PROMISSORY NOTE—SUIT BY EXECUTORS THE WILL OF WHOSE TESTATOR HAD BEEN PROBATED DURING THE WAR, &C., AND LETTERS GRANTED BEFORE 20TH JULY, 1865.]

1. *Foreign courts; what will be regarded as acts of.*—The probate of a will, and letters testamentary granted thereon, by a probate court of the rebel State government of Alabama, during the rebellion, and before the 20th day of July, 1865, the date of Governor Parsons' proclamation, and before the judge of said court had taken the oath of amnesty and of office required by said proclamation, are to be regarded as the acts of a foreign court.

2. *Same; executors, whose letters testamentary were granted by; what must be done in order to maintain an action in courts of this State.*—Executors, in virtue of such letters, can not maintain an action in the courts of this State, but new letters testamentary must be taken out, and new security given, as prescribed by law. The right to take out new letters will

be admitted as a matter of course, unless some special reasons intervene to the contrary.

3. *Same; protection to executor.*—Executors who have acted in good faith, and in conformity to the will, under such letters, should be protected. Generally, the same rules will apply as to administrators.

APPEAL from Circuit Court of Chambers.
Tried before Hon. LITTLEBERRY STRANGE.

THE appellants, as the executors of the last will and testament of W. B. S. Gilmer, deceased, in 1869 commenced their action in the circuit court of Chambers county against appellee, as the administratrix of Benjamin B. Avery, deceased, and complained on a promissory note made by defendant's intestate, on the 22d day of January, 1863, and payable one day after the date thereof.

To this complaint the said defendant pleaded, in substance, that said will was proved before one John Appleby, acting as probate judge of said county of Chambers, on the 13th day of February, in the year 1865, under a commission of the rebel government of the State of Alabama, while said State was in open rebellion against the government and authority of the United States, and that letters testamentary were issued by said judge to the plaintiffs, on the 23d day of June, in said year, and before the rightful authority of the United States had been re-established in said State, and when said judge was acting without any legal authority from the rightful government of the United States of America, and that the probate of said will, and the letters testamentary so granted, were illegal, null and void, and of no effect and validity whatever.

To this plea the plaintiffs demurred, and, with other causes of demurrer, assigned the following, to-wit: " That said plea presented no legal cause why the plaintiffs should not recover," &c. The court overruled the said demurrer, and the plaintiffs excepted to the decision of the court, and suffered a non-suit, under section 2759 of the Revised Code, and have appealed to this court, and here assign the overruling of their demurrer for error.

JEFFERSON FALKNER, for appellant.
W. H. BARNES, *contra.*

[No briefs came into the Reporter's hands.]

PECK, C. J.—The error assigned raises the question as to the legal effect of the probate of the will, and the grant of letters testamentary by the probate court of Chambers county, during the existence of the government established under the late rebellion.

In the case of *Martin v. Hewitt*, at the June term, 1870, we held, that the judgments rendered by the courts of the late rebel government in this State, created no liens on the property of defendants that, in the absence of legislation, would be recognized and enforced by the courts of the present government; that such judgments could stand upon no higher grounds than foreign judgments, and constituted mere causes of action, and could only be enforced by the law of comity, and in actions brought for that purpose.

In the case of *Chisholm v. Coleman*, 43 Ala. 204, it is decided, that the government in this State, under the rebellion, was not a part or member of the United States, or the government thereof; that it was a rebel government, and nothing more. It was, therefore, in its nature and character, more nearly assimilated to a foreign government than to anything else to which we can compare it. It did not recognize the constitution and laws of the United States, or in any manner yield to them any obedience. It claimed to be altogether independent of that government; the judges of its courts derived their authority, and received their commissions, from an alien hostile power, waging open and flagrant war upon, and denying all allegiance to, the government of the United States. For these reasons it is, that the judgments and judicial acts of its courts can stand upon no higher grounds than the judgments and judicial acts of foreign courts.

It is true, there seems to be an apparent incongruity in this view of the case, arising from the fact that the rebel State government had the same name, and was in possession of the same geographical territory, as the legitimate government of the State of Alabama before and since the rebellion, and the people were the same people; but this apparent incongruity disappears when we look to princi-

ples, and not to names. For we know that the rebel State of Alabama, not rightfully, but in fact, was in all its essentials, its sovereignty, dominion and government, as utterly foreign to the United States as the government of Canada or of Santo Domingo ; consequently, the judgments of its courts and judicial acts can be treated as having no greater legal effect than the judgments and judicial acts of a recognized foreign government. They certainly were not the judgments and judicial acts of the courts of one of the United States.

Treating the probate of the will of the testator and the letters testamentary issued by the probate court of Chambars county under the rebellion, as the judicial acts of a foreign court, we find no difficulty in holding that the plaintiffs, in their character of executors, can not maintain the present action. The admitted doctrine, both in England and this country, is that a foreign executor or administrator cannot maintain an action in the courts in either country, in virtue of his foreign letters testamentary or of administration. New letters must be taken out, and new security given, according to the rules of law prescribed in the country or jurisdiction where the suit is brought.

The right to take out such new letters is admitted as a matter of course, unless some special reasons intervene to the contrary.—Story's Conf. Laws, § 512, and authorities there cited ; 2 Kent Com. 3d ed., note *b* 422.

Usually, such new letters are held to be ancillary merely, but under the peculiar circumstances attending such cases as the present, they should be regarded as original. If the plaintiffs refuse or fail to take out new letters, then administration with the will annexed may be granted to some third person. Such an administration should be considered in the nature of an administration *de bonis non.*

So far as the plaintiffs have acted in good faith in their administration, and in conformity to the will, they should be protected. The probate of the will is not void, but should stand on the same footing as a foreign probate. The plaintiffs, under their letters testamentary, and by virtue of the will, were authorized to take possession of the personal property of their testator, and to collect the

debts of the estate, where voluntarily paid, or even by suit, if no objections were made. They might also pay the just debts of the testator, and the legacies, if any, bequeathed by the will. Whether, if administration be granted to another, the probate court can compel the plaintiffs to settle their administration, we do not decide; but if it can not, treating them as trustees, a court of chancery undoubtedly can.

The judgment of the court below is affirmed, at appellant's costs.

SAFFOLD, J., *dissenting*, for the reasons given in his dissenting opinion in *Noble Bros. v. Cullom,* 44 Ala.

NOTE BY THE REPORTER.—At a subsequent day of the term, the appellant applied for a rehearing, the argument in support of which did not come into the Reporter's hands. It was responded to as follows :

PECK, C. J.—The opinion in this case was written after the maturest consideration, and the petition for rehearing has been carefully examined. I am still of the opinion that the decision is right; it must, therefore, stand as the judgment of the court. Further, we do not feel at liberty, nor do we think it wise, to undertake to indicate what ought to be the practice under this decision, beyond what is said in the opinion itself.

The rehearing is denied.