# Nelson, Adm'r, v. Boynton et al.

*Bill in Equity by Administrator with Will Annexed, to recover unadministered Assets, &c.*

1. *Overruled case.*—The decision in *Bibb & Falkner v. Avery,* (45 Ala. 691) that the probate of wills and grant of letters therein by probate courts in this State during the late war, conferred no authority upon executors or administrators to discharge their trusts after the close of the war, without taking out new letters and giving new security, has been entirely overturned as authority, by later and better considered cases in this court.

2. *Probate of wills, &c., during the war; validity of.*—The probate of wills and grant of letters thereon, by the probate courts of this State during the late war, were perfectly legal and valid; and a subsequent probate of the will, and grant of administration with the will annexed, the former letters not having been revoked and the administration not being vacant, is a mere nullity.

3. *Same; grant of letters, nature of.*—The grant of letters testamentary or of administration, while in some respects a proceeding *in personam,* is, in its most important bearings, a proceeding *in rem,* and if the court granting the letters has jurisdiction, *eo instanti,* the title to the personalty vests in the personal representative, and also a statutory power over the realty, which can not be divested except by sale or other lawful disposition by him, or by valid legal proceedings.

4. *Same; executor, when estopped in assertion of right as such.*—While the legal title to personalty is vested in the executor or administrator, he holds it in trust; and though, so far as concerns him personally, he may, by acts of mal-administration, estop himself in some cases, from asserting his right to the property thus mal-administered, the estoppel will not bar the claims of the estate.

5. *Same.*—The rightful executor can not, by mis-pleading, or acquiesence in the unfounded claim of another asserting the right to administration under a void appointment, change the administration, or confer upon another who is otherwise without right, rights and powers belonging only to the lawful executor; nor can he, thereby, estop beneficiaries under the will from denying the authority of such claimant.

6. *Same.*—Upon application to the probate court to compel an executor to give a new bond, that court has no jurisdiction to determine the right of another claimant to the administration; and although it dismisses the application, on the ground that such claimant is rightfully in the administration, and the executor without right to it, its decree, so far as it undertakes to determine the right to the administration, is a mere nullity.

7. *Same.*—Where one claiming to be the administrator files a bill for foreclosure of a mortgage belonging to the testator, to which proceeding the rightful executor is made a party, and he puts in issue the complainant's authority, and that is decided against him and a decree is rendered granting relief, from which the rightful executor does not appeal, this will estop the rightful executor from disputing the right to such fund; but the court is not prepared to admit that the estoppel will reach any further than the particular claim.

APPEAL from Chancery Court of Dallas.

Heard before Hon. CHARLES TURNER.

The original bill in this cause was filed on the 5th of July, 1872, by R. M. Nelson, as administrator, with the will annexed, of Alanson Saltmarsh, deceased, against William M. Boynton, Mary A. Saltmarsh, and others, alleged to have been former executors of said estate, and their sureties, and sought to recover unadministered assets, and to compel an account, and a settlement of their trust with him; it being alleged that the defendants had never made a settlement, and had wasted the assets of said estate.

The bill alleges that Alanson Saltmarsh died in Dallas county, where he resided, on the 13th day of May, 1861, leaving a last will and testament which was "duly admitted to probate in a court in the county aforesaid, (Dallas), then styled and acting as the probate court for said county in this State. At the time that the will was admitted to probate, and until the 6th of May, 1865, the State was at war with the United States," &c.; that on the 15th day of July, 1861, Mary A. Saltmarsh, William M. Boynton, and Frank K. Beck, who were nominated as executrix and executors of said will, took out letters testamentary and gave bond, &c., and came into possession of lands and a large amount of assets belonging to said estate, which, it is charged, were wasted by them; that originally the executors and executrix gave a joint bond, but Frank K. Beck having died, on the application of one of the sureties, Boynton and Mrs. Saltmarsh gave separate bonds; that after the war, Boynton still continued to act, and collected some of the assets; that Nelson was appointed administrator *ad colligendum* of the estate by the probate court of Dallas county, on the 18th day of April, 1869, and he demanded the property of the estate from Boynton, who refused to deliver it; that on the 8th of July, 1871, Nelson was appointed special administrator, pending the probate of the will of said Saltmarsh, and on the 9th day of October, 1871, Saltmarsh's will was duly admitted to

[Nelson, Adm'r, v. Boynton et al.]

probate, and the persons nominated therein having failed to qualify, Nelson was appointed administrator with the will annexed, and gave bond, &c., "whereby he became, and is, the sole administrator of said will."

A demurrer was put in which need not be further noticed, and thereupon complainant filed an amended bill which made the will an exhibit, and alleged, in substance, that under the terms and limitations of the will, neither the heirs at law nor their personal representatives, have any interest in, or claim to the estate whatever; that "Omar Saltmarsh was the sole surviving residuary devisee and legatee, and had not received the property and money devised and bequeathed to him, but was claiming and demanding the same of orator as the administrator of said estate," and he was accordingly made a defendant. It also alleged that the other devisees and legatees were non-residents of the State, and that by reason of their number, and the changes by death, births and marriages, complainants' were unable to state their names and make them defendants; he prayed leave to bring them in, in event of a surplus for distribution, after the payment of debts, &c. The amendment then alleges that he had come into possession of certain property, and that there were certain debts outstanding and suits pending against him therefor, &c.

Boynton again interposed a demurrer, insisting that the bill, as amended, showed no right in Nelson to call him to account, but, on the contrary, that he (Boynton) was still the rightful executor of said estate.

Thereupon, Nelson filed a second amendment, setting up to estop Boynton from denying complainant's authority, and the rightfulness of his claim as administrator, with the will annexed, certain proceedings in the probate court of Dallas. The record relied on shows that on the 10th day of March, 1873, R. H. Dawson, as the administrator of Henry Atwood, and William K. Beck, who were creditors of Saltmarsh, filed an application to have Boynton removed from the administration of said estate, on the ground that he was insolvent and was wasting the assets, and, in event there was not sufficient ground for his removal, that he be required to execute a new bond. Boynton set up in answer to the petition "that his appointment was made by the probate court, during the existence of the insurrectionary government in Alabama, and that his only authority, or claim of authority to act as such, was derived from said probate," "and defendant further says that the will of said Alanson Saltmarsh was never admitted to probate in this court until the 9th day of October, 1871, and a short time thereafter letters

of administration on the estate of said Alanson Saltmarsh, with said will annexed, were issued to one Richard M. Nelson, who has ever since, and is now, acting as the administrator of said estate under and by authority of said letters, and defendant says that no letters testamentary or of administration were ever issued by this court; on the estate of said Alanson Saltmarsh or his will, except those issued to said Richard M. Nelson, as above stated. This answer was sworn to by Boynton. The plaintiffs, in the application, filed a replication to said answer, which, in effect, admits all the facts stated in Boynton's answer, and thereupon alleged that R. M. Nelson became and was, and ever since has been, and still is, the administrator with the will annexed, of said Saltmarsh. In the record of this proceeding also appears an agreement between the plaintiff in the application and Nelson, that the latter should "be made a party defendant, and put in immediate answer." He accordingly filed an answer, which, after setting up the facts in relation to the probate of Saltmarsh's will, in the year 1861, and its second probate in 1869, (substantially as set forth in the original bill) alleges that he qualified thereunder, &c., "and thereby became, and ever since has been, and still is, administrator holding the will annexed of said estate." The probate judge, in a decree reciting the facts as to the respective probates of the will, and that the office of executor was vacant at the time that Nelson was appointed, and that, therefore, Nelson was still administrator, overruled the application to require a new bond or to have Boynton removed, as he had ceased to be executor, before the filing of the petition.

Boynton again demurred, on the ground that defendant showed no right in himself to the relief prayed, but, on the contrary, showed that he was not entitled thereto. Omar Saltmarsh also demurred. Nelson then filed a third amendment, which stated, in substance, that Omar Saltmarsh, Elijah Saltmarsh, Esther Comstock and S. H. Webb, all of whom are devisees and legatees under the will, requested him to become administrator with the will annexed, and that he took out letters at their instance and request; that Webb had rented lands from him as administrator and given his notes therefor. This amendment also alleged that on the 16th day of June, 1873, Nelson made final settlement in the probate court of his special administration, and all persons interested as heirs, devisees or legatees had notice of and were parties to said suit; that none of them denied or questioned his rights, but, on the contrary, recognized him as the lawful administrator.

Nelson further alleged that in January, 1872, he, as ad-

ministrator, with the will annexed, filed his bill in the chancery court against Wesley Plattenburg, William M. Boynton and Joseph Hardie, to foreclose a mortgage on lands, given to Saltmarsh in his life time. In that suit the defendants put in issue Nelson's right to sue as administrator, and alleged that his appointment was void; but the chancellor, in April, 1873, granted the relief prayed, and rendered a final decree in his favor, from which Boynton did not appeal. Boynton and Saltmarsh again interposed demurrers upon the grounds already set forth.

The court overruled Boynton's demurrer, and sustained the demurrer of Omar Saltmarsh.

Nelson appeals, and assigns the decree as error.

BROOKS, HARALSON & ROY, for appellant.—The bill shows Nelson's appointment and qualification and the grant of letters to him by the proper court; and the second amendment to the bill shows that in a proceeding had in the probate court, to which Nelson and Boynton were parties, the direct issue was as to who was the personal representative of Saltmarsh, and it was there adjudicated that Boynton was not, and that Nelson was the administrator.

"The jurisdiction of the probate court as to the granting of letters testamentary and of administration, is conferred by the constitution of the State, and is *original, general* and *unlimited.* It is to this extent a court of *general,* not limited or special jurisdiction."—*Russell v. Ervin's Adm'r,* 41 Ala. 299 ; 32 Ala. 676; 36 Ala. 676; 40 Ala. 155. Every presumption is made, not only in favor of their proceedings, but of their jurisdiction."—36 Ala. 569, and cases cited. And the appointment of an administrator *de bonis non* as evidence of a vacancy, "is conclusive until clearly and explicitly disproved."—36 Ala. 569, and cases cited. "And the leaning of the tribunal in which the order is collaterally assailed, will be to such a construction of the record as will uphold the validity of the proceedings."—36 Ala. 563.

So the order appointing an administrator *de bonis non,* cannot be held void in a collateral proceeding, because it does not show the removal or resignation of the administrator in chief.—*Welburner v. Chapman,* 32 Ala. 679. On the contrary, it will be presumed that all the pre-requisites of the law have been complied with.—*Eslava v. Elliott's Adm'r,* 5 Ala. 264; *Savage v. Benham,* 17 Ala. 127. If there be errors and irregularities in the probate court, its proceedings are *voidable,* not *void,* and they must be set aside by a *direct* proceeding there, and not collaterally in another court.—*Bradly v Broughton,* 34 Ala. 706, and cases there cited.

But recourse to the above principles is not necessary here. The amended bill shows that the question whether Nelson or Boynton was the administrator, was made an issue, and was tried and *adjudicated* between them, in a cause to which they were parties, and in a court of "original and unlimited" jurisdiction of the subject matter. The issue was decided in favor of Nelson. No appeal was taken, and the judgment of the court remains in full force and effect. That was in the nature of a proceeding *in rem*. It settled the *thing* in issue—fixed the *status* of Nelson and Boynton with respect to the Saltmarsh estate. That judgment estops and is conclusive upon, not only Boynton and his defendants—which is sufficient in this case—but is conclusive upon all the world.—1 Greenl. Ev. § 550; *Deslonde & James v. Darrington*, 29 Ala. 96; Herman's Law of Estoppel, § 128, p. 132; Bigelow on Estoppel, p. 159.

MORGAN, LAPSLEY & NELSON, *contra.*—The decision in *Bibb & Falkner v. Avery*, 45 Ala., was soon departed from in effect, though not in form, by the very court that rendered it.—46 Ala. 290; 45 Ala. 142; 48 Ala. 48; 46 Ala. 610; 45 Ala. 688. It never had any strength in reason, and has been quietly ignored as authority. It has been swept away by the decisions of this court and the supreme court of the United States.—*Parks, Brewer & Co. v. Coffey*, 52 Ala. 32. The executorship was filled at the time of the second probate and the grant to Nelson of letters. That appointment was, therefore, utterly void.—*Matthews v. Douthit*, 27 Ala. 275; *Goodwin v. Hooper*, 45 Ala. 613; *Coltart v. Allen*, 40 Ala. 155. The alleged estoppel is worthless. The facts are not stated with sufficient certainty, and the presumptions must be against the estoppel.—24 Ala. 534; 37 Ala. 344; *Mallet v. Foxcroft*, 1 Story, 472. The probate court, on the application of the creditors to remove Boynton or require a new bond, was not authorized to try Nelson's right to the administration. In the reasoning of the judge of that court, it is true that he finds that Nelson was administrator, and, therefore, Boynton was not executor; but all the statute gave him power to do was to remove or require a new bond. He could not go beyond this, and if he did it is not a *judgment*. The theory of estoppel by judgment, is that the matter has been decided between the parties; but a void judgment cannot determine anything. The legatees were not parties to the Plattenburg suit, and hence not bound by the judgment or decree against the administrator.—29 Ala. 233. The executor and legatees combined could not appoint an administrator without the aid of the court of probate; and yet the

theory of appellant is that they made a void appointment valid, and made Nelson the legal representative, though he was never appointed.

STONE, J.—In May, 1861, Dr. A. Saltmarsh, a resident of Dallas county, died, leaving a last will and testament, duly executed and attested to pass personal and real property. This will was duly probated in the then probate court of Dallas county, and in July, 1861, letters testamentary were issued by that court to Wm. N. Boynton, Franklin K. Beck, and Mrs. Saltmarsh, the executors and executrix named in the will; and they entered upon the discharge of their duties.

At the June term, 1871, our predecessors, by a majority decision, ruled that the probate of a will, and grant of letters thereon by a probate court of the rebel State government of Alabama, at the time shown above, are to be regarded as the acts of a foreign court; and that such executors can not maintain an action in the courts of this State. They further held, that to perform lawful acts of administration, new letters must be sued out, and new security given.—*Bibb & Falkner v. Avery*, 45 Ala. 691.

The said will of A. Saltmarsh was again, in 1871, proven and admitted to probate in the then probate court of Dallas county; and in December, 1871, as the bill alleges, "the executors named in said will having failed to qualify, the said probate court, on the 30th day of December, 1871, appointed said R. M. Nelson general administrator, with the will annexed, of said estate; . . . who then became, and still is, sole administrator thereof."

In probating said will a second time, and in the issue of letters of administration to Nelson, the court, so far as the record informs us, took no note of the older proceedings, by which the will was probated, and letters testamentary issued in 1861, but proceeded, on its original, inherent powers, to make what purports to have been an original grant of letters of administration in chief, with the will annexed. In this the probate court was, doubtless, controlled by the decision of this court in *Bibb & Falkner v. Avery, supra*.

The present bill, setting forth the facts above, was filed in July, 1872, to recover the unadministered assets of said estate, and to bring Boynton to a settlement of his said administration. The original bill was several times amended. The bill, as amended, was demurred to; and one ground of demurrer was that "the complainant filed said bill as the administrator, with the will annexed, of Alanson Saltmarsh, deceased, and shows on the face of his said bill that he is

not the administrator of said estate as claimed." The demurrer was sustained by the chancellor so far as it affects the legatees under the will; and from that decretal order this appeal is prosecuted.

In the case of *Horn v. Lockhart,* 17 Wal. 580, the supreme court of the United States laid down rules incompatible with the principles declared in *Bibb & Falkner v. Avery, supra.* That court said, "the acts of the several States in their individual capacities, and of their different departments. of government, executive, judicial, and legislative, during the war, so far as they did not impair, or tend to impair, the supremacy of the national authority, or the just rights of citizens under the constitution, are, in general, to be treated as valid and binding. The existence of a state of insurrection and war did not loosen the bonds of society, or do away with civil government, or the regular administration of the laws. Order was to be preserved, police regulations maintained, crime prosecuted, property protected, contracts enforced, marriages celebrated, estates settled, and the transfer and descent of property regulated, precisely as in time of peace. No one, that we are aware of, seriously questions the validity of judicial and legislative acts in the insurrectionary States touching these and kindred subjects, when they were not hostile in their purpose or mode of enforcement to the authority of the national government, and did not impair the rights of citizens under the constitution."

In the case of *Texas v. White,* 7 Wal. 700, the supreme court of the United States enunciated the same principles, substantially as above declared.

Following the decision in *Horn v. Lockhart, supra,* this court, in *Catterlin, Adm'r, v. Morgan,* 50 Ala. 501, decided that "a decree of the probate court, on the final settlement of an administrator's accounts, rendered in August, 1864, finding a specified sum due to a distributee, and ordering execution therefor, can not be set aside as void on the ground that it was rendered by a rebel court."

At the same term, in the case of *Powell v. Young,* this court held that "judicial proceedings had in this State during the recent war, when they did not impair, or tend to impair, the supremacy of the national authority, or the just rights of citizens under the constitution, are valid and binding." The same principle was declared in the case of *Riddle v. Hill,* at the same term, and. in *Parks v. Coffey,* 52 Ala. 32.

These several decisions, which merit and have our approbation, entirely overturn the authority of *Bibb & Falkner v. Avery, supra,* and force us to declare that the probate of Dr. Saltmarsh's will, and qualification of the executors thereof

in 1861, not only were not judgments and decrees of a foreign court, but, being conservative in their character, they were, and are, in every respect, legal and binding.

In the Revised Code, § 2014, it is declared that "letters testamentary or of administration, and letters appointing a special administrator, or to any general administrator, sheriff or coroner, granted by any probate court having jurisdiction, are conclusive evidence of the authority of the person to whom the same are granted, from the date thereof, until the same are revoked."

Probate of wills and the grant of letters testamentary or of administration, are in the nature of proceedings *in rem.* The probate of a will is technically and purely so. It defines and fixes the status of the estate.—2 Smith's Leading Cases, 593; *Deslonde v. Darrington,* 29 Ala. 95; 1 Greenl. Ev. § 550. So, in the grant of letters testamentary or of administration, while in some aspects it is a proceeding *in personam,* nevertheless, in its most important bearing, it is a proceeding *in rem.* Property must have a living owner. When the owner dies, his title ceases. As to personalty, the title remains undefined and in abeyance, until a personal representative is appointed and qualifies. When that is done, the title of the decedent vests *eo instanti* in such personal representative. Not by virtue of a conveyance, for there is none. The appointment effects the transfer *proprio vigore.* The only inquiry in such cases is, had the court jurisdiction? If so, the title vests in the representative, and can not be devested except by sale, or by some legal proceeding.— *Treadwell v. Ramey,* 9 Ala. 593; *Ramey v. Green,* 18 Ala. 774. And under our statutes, a qualified power over and right in the realty vests in the personal representative, as a legal sequence of his appointment. These are attributes of a proceeding *in rem.* They define and create the status of the decedent's property-rights.

The administration being full, can there be, within the same jurisdiction, another appointment of a personal representative to the same estate? And if one be made, where does the title remain? It can not be in each, for, to so hold, would give to each the incompatible right to sue, and recover from the other. It can not be in the two jointly, for reasons too obvious to require statement. One title must be paramount to the other. Which is it? It would seem to result, necessarily, from the principles stated above, that the title to the property of a decedent, and the right to sue, are in the person first appointed by a court having competent jurisdiction in the premises. In the case of *Matthews v. Douthit,* 27 Ala. 273, the record showed the appointment of an ad-

ministrator *de bonis non*, who cited the administratrix in chief to a settlement. This court held that the administratrix in chief had never duly resigned or been removed; but that she was still administratrix. The court further held that the appointment of the administrator *de bonis non* was, for the reasons above stated, void; and that he thereby acquired no rights as administrator.

In *Gray v. Cruise*, 36 Ala. 557, the same doctrine was affirmed.—See, also, *Mosely v. Mastin*, 37 Ala. 216.

The case of *Coltart v. Allen*, 40 Ala. 155, was a very strong case. The first administration in that case was revocable and voidable. Still, this court held that because the second appointment was made without revoking the first, it was absolutely void.—See, also, *Pettigru v. Ferguson*, 6 Rich. Eq. 378.

We have said above that the grant of administration is in the nature of a proceeding *in rem.*—See, also, 1 Williams on Exec. 476. The result is to fix the legal title, to the extent above stated, in the personal representative. He holds it, not in his own right, but in trust for others. So far as he is personally concerned, he may, by his own acts of mal-administration, estop himself, in certain cases, from asserting title to property which is the subject of such mal-administration.—See authorities collected in *Hopper v. Steele*, 18 Ala. 831. But such estoppel does not operate a bar to the claims of the estate. That remains unaffected by such personal estoppel. We do not think any or all of the grounds relied on, operate a change of the person of the administrator, or transfer the trust from Mr. Boynton to Mr. Nelson. The judicial proceedings relied on, as constituting an estoppel, were all instituted after Mr. Nelson claims to have been appointed, and after the present suit was instituted. The first was a petition by creditors of Dr. Saltmarsh, to have Mr. Boynton give a new bond, on the alleged ground that his sureties had become insufficient. To this extent that court had jurisdiction. The amended petition brought Mr. Nelson before the court, and prayed the judgment of that court, whether Boynton or Nelson was the administrator. The court dismissed the petition, thus refusing to require Boynton to give a new bond. He had power and jurisdiction to make this order. He had no power, in that proceeding, to determine authoritatively, whether Boynton or Nelson was the administrator. The reasons he gave for his opinion, while justified by *Bibb & Falkner v. Avery*, were, nevertheless, unsound, and, as a decree, they were *coram non judice.*

In the case of *Nelson v. Plattenburg and Boynton*, the re-

sult of the decree was to estop Boynton, so far as that claim is concerned, from disputing Nelson's right to that fund. We are not prepared to say the estoppel can be construed as extending any farther than as it affected that claim. Certainly it does not estop the beneficiaries under the will. A claim of administration, otherwise void, can not be legalized and made valid by any mispleading of the rightful executor, or by an acquiesence by him in an erroneous decree of the chancellor.

We had hoped we would be able to find some solution of the very anomalous case presented by this record, which would tend to disentangle the complicated web in which the unfortunate case of *Bibb & Falkner v. Avery* has involved it. We have not been able to do so. We indulge the hope, however, that in the future adjustment of the rights involved in this, and kindred litigation connected with this estate, a liberal system of concessions will mitigate the consequences which must always result from a decree of nullity pronounced on solemn judicial proceedings. Administrators, who act in good faith, are entitled to indulgent consideration.—See *Gould v. Hayes,* 19 Ala. 438; *Henderson v. Simmons,* 33 Ala. 291. Liabilities assumed and judicial action invoked under the express sanction and decree of this, the highest judicial authority in the State, certainly present as strong a claim to generous forbearance as any which can easily be conceived.

There is no error in the record prejudicial to appellant, and the decree of the chancellor is affirmed.