# Moore *v.* Randolph's Adm'r.

*Bill in Equity by Heirs and Devisees, for Account, Settlement, and Distribution of Estate, and to enforce Vendor's Lien on Lands sold by Executor.*

70 575<br>98 626

1. *Diligence required of administrator.*—Administrators, acting in good faith, are bound to bring to the service that degree of skill and diligence which a man of ordinary prudence bestows on his own similar private affairs, but nothing more.

2. *Liability for rents, as for* devastavit.—Where an executor becomes himself the purchaser of a portion of the lands sold by him under a decree of the Probate Court, and dies in possession thereof, not having paid the purchase-money, nor made a final settlement of his accounts; and letters of administration on his estate, and on the testator's estate, are granted to the same person, who thereupon takes possession of the land, and accounts to the executor's estate for the rents; he would, "under ordinary circumstances," be chargeable with such rents, at the suit of the devisees and distributees of the testator's estate, as for a *devastavit*. But, under the peculiar circumstances of this case, as shown by the record—the sale having been made during the late war, under a decree which, on its face, was of questionable validity; the validity of judicial proceedings during the war being unsettled by the courts when the administrator entered on his duties; the sale not having been ratified by the parties in interest until after the filing of their bill in this case for an account and settlement; and the administrator having acted throughout under the advice of able and experienced counsel—enough is not shown to charge him with bad faith or negligence.

3. *Sale of lands under void probate decree; election by heirs and distributees.* When lands are sold by an executor or administrator, under an order of the Probate Court which is void on its face, neither he, nor his successor in the administration, can assert a vendor's lien on the land for the unpaid purchase-money; but the heirs and distributees of the estate

[Moore v. Randolph's Adm'r.]

may, at their election, ratify the sale, and enforce a vendor's lien for the purchase-money.

4.   *Allowance of attorney's fees to administrator.*—An administrator is entitled, on settlement of his accounts, to an allowance for reasonable attorney's fees incurred in an action instituted by him in his representative capacity, unless it affirmatively appears that he betrayed a want of proper prudence or diligence in bringing the action; and neither his failure to recover a judgment, nor his failure to take an appeal, is sufficient to prove that he was guilty of negligence, or to deprive him of the right to compensation.

5.   *Note payable to administrator, and signed by him as surety; skill and diligence required of attorney.*—An administrator can not maintain an action on a note payable to himself in his representative character, and signed by him as surety for the principal maker; yet the court "is not prepared to say" that his successor in the administration could not maintain an action on it; and whether such action be maintainable or not, an attorney is not guilty of gross ignorance or gross negligence in bringing it.

6.   *Allowance to administrator for counsel fees under bill for settlement. Held*, under the facts shown by the record in this case, being a bill filed by the heirs and distributees to compel a settlement of the administrator's accounts and a distribution of the estate, that the administrator was properly allowed "about one half of an ordinary fee for defending such suit."

7.   *Allowance of commissions on proceeds of sale of lands.*—Under a bill to compel a settlement of an administrator's accounts, and a distribution of the estate, and to enforce a vendor's lien on lands sold by a preceding administrator under a probate decree; the lands being sold, pending the suit, and the proceeds brought into court for distribution, but without the agency of the administrator; he is not entitled, on settlement of his accounts, to commissions on such proceeds.

8.   *Exception to register's report on statement of account.*—When an exception is duly taken to the allowance of an item by the register, in an account stated by him under an order of reference, and is overruled by the chancellor, it is not necessary, in order to render the exception available on error, that it should be renewed before the register on a re-statement of the account, as corrected in accordance with rules laid down by the chancellor.

9.   *Same.*—Under the former rules of chancery practice (Rev. Code, 835, Nos. 88–9), exceptions to the register's report, in the statement of an account under a reference, should be prepared and signed by counsel, and filed in court as a separate paper in the cause; but an informality in the presentation of the exception, which was not objected to, and which might have been cured if objection had been made to it, will not be considered by this court.

10.   *Decedent's estate; removal of settlement into equity.*—The heirs and distributees of a decedent's estate, or the legatees and devisees under his will, may remove the settlement into the Chancery Court, without assigning any special reason for the removal, at any time before proceedings for a settlement have been commenced in the Probate Court.

APPEAL from the Chancery Court of Hale.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 30th June, 1870, by Mrs. Harriet B. Moore and Mrs. Ann T. Hill, each suing by her husband as next friend, as devisees and legatees under the will of their deceased sister, Jane Randolph; against Thomas C. Clark, as the administrator *de bonis non* of the

estate of said Jane Randolph, and also as the administrator de bonis non of the estate of Richard Randolph, deceased, who was the executor of the last will and testament of said Jane Randolph; and against several other persons who were interested in the estate of said Jane Randolph, as legatees, devisees, and distributees; and against Randolph Spedden, Jabez Curry, and others, who were in possession of lands which had belonged to said Jane Randolph at the time of her death, and which were afterwards sold by said Richard Randolph, as her executor, under an order of the Probate Court, for the purpose of making an equal division among the devisees.

The prayer of the original bill was, "that said decree of said Probate Court for the sale of said lands, and the sale made in pursuance thereof, may be declared to be void; that an account may be taken of the rents received by said pretended purchasers respectively, or of the rental value of said lands; that said pretended purchasers, and others in possession of said lands under them, be required respectively to pay reasonable rents therefor, or the amounts received by them respectively for rents; that said lands may be sold, under the order and direction of this honorable court, and the proceeds of sale distributed in accordance with the provisions of said will, and in such manner that the shares coming to complainants may, by the order of the court, be preserved as their separate property and estate, under and in accordance with the intention of said will, and also in such manner that the sums which may be so received by complainants shall be equal to those heretofore received by the other residuary legatees and devisees, under the ninth clause of said will, or as nearly so as the fund to be distributed can make them; and, for this purpose, that an account of the receipts of money or property by each of said residuary legatees and devisees, under said ninth clause of said will, may be taken: Or, if the court should hold that said sale of lands was not void, that in such case an account may be taken of the amounts due for the purchase-money, from each of said purchasers respectively; and that said lands may be sold for the payment of such balances so found to be, with the interest thereon; and that in such case the moneys arising may be distributed in the manner hereinbefore indicated, or in such other manner as may seem just and equitable;" and for other and further relief, under the general prayer.

The administrator answered the bill, admitting its material allegations, but insisting on the validity of the sale of lands under the order of the Probate Court; and the bill was afterwards amended, the amendment being allowed by the court on the 21st January, 1871, by striking out the original prayer, and inserting the following: "That this court may take juris-

37

diction of the administration of the estate of said Jane Randolph, deceased, and may distribute the same according to the terms and provisions of the last will and testament of said testatrix; that an account may, for this purpose, be taken of the amount due for the purchase-money of said lands, from each of said purchasers; and that said several tracts of land may be sold, for the payment of such balance so found to be due for each of them respectively; and that said estate may be so distributed, under the order of the court, that the complainants shall receive shares equal with those of the other distributees; and that the shares so coming to them may, by the order of the court, be preserved to them as their separate property and estate, under the provisions and limitations of said will, and in accordance with the intentions thereof; and that, for the purpose of such equitable distribution, an account may be taken of the receipts of money and property by each of said residuary legatees and devisees, under the ninth clause of said will; and if complainants have in anything mistaken their rights or appropriate relief," then for other and further relief.

Jane Randolph, the testatrix, the settlement and distribution of whose estate is involved in the suit, died in October, 1862, in that part of Greene county which now forms a part of Hale; and her last will and testament was duly admitted to probate, in said county of Greene, in December, 1862, and letters testamentary thereon granted to Richard Randolph, therein named as executor. The testatrix was possessed of a large estate, a part of which was a valuable plantation, containing over two thousand acres; and these lands were devised, by the 9th clause of the will, to the brothers and sisters of the testatrix—namely, Richard Randolph, Robert Carter Randolph, Harriet B. Randolph (now Moore), Ann T. Randolph (now Hill), and Lucy Tayloe—who were also made residuary legatees. The personal property was sold by the executor, and the proceeds applied in payment of debts and in making partial distribution among the legatees. In May, 1863, he obtained from the Probate Court an order for the sale of the lands, for the purpose of making division among the parties interested; and the lands were sold, under this order, on the 24th October, 1863. At that sale, one Randolph Spedden became the purchaser of a portion of the lands, containing about 1,377 acres, and gave his three notes for the purchase-money, payable one, two, and three years after date, respectively; said notes being made payable to said Richard Randolph as executor, who also signed them as a maker, or surety for Spedden. This arrangement was made in pursuance of an agreement entered into between said Spedden and the executor, prior to the sale, to the effect that Spedden should become the purchaser at the sale, and should allow the executor

[Moore v. Randolph's Adm'r.]

to have a portion of the lands; and in consummation of this agreement, they divided the lands between them, the executor executing to Spedden his promissory notes for the purchase-money, and taking Spedden's bond for title. The residue of the lands was bought at the sale by said Robert Carter Randolph, who gave his three notes for the purchase-money, with said Randolph Spedden as surety, payable to the executor, one, two, and three years after date respectively. Spedden, Robert C. Randolph and the executor, as the purchasers of said lands, took possession of their respective portions; and it was alleged that two of Spedden's notes, and also two of Robert C. Randolph's, were unpaid when the bill was filed. Richard Randolph, the executor, died in September, 1866, never having made a final settlement of his accounts; but a final settlement of his administration was made by his widow as executrix of his will, on the 19th May, 1868, when a balance of $1,290 was ascertained to be due from him to the estate. On the 9th May, 1868, letters of administration *de bonis non* on the estate of said Jane Randolph were granted to Thomas C. Clark, the defendant in this suit; and he was afterwards appointed administrator *de bonis non* of the estate of said Richard Randolph, the executrix having resigned. In June, 1868, Robert C. Randolph was duly adjudged a bankrupt; and on the 12th July, 1869, on the petition and report of Clark as administrator, the estate of Richard Randolph was declared insolvent.

The unpaid notes of Spedden and Robert C. Randolph, for the purchase-money of the lands, went into the possession of said Clark, as administrator *de bonis non* of Jane Randolph's estate; and he caused suits to be brought on them against the makers. The action against Robert C. Randolph was prosecuted to a judgment in favor of the plaintiff, but the suit against Spedden was successfully defended, on the ground that, Richard Randolph being both the payee and one of the makers, no action would lie on it; and nothing was collected on the judgment against R. C. Randolph. The decree for $1,290, rendered in favor of Jane Randolph's estate against the estate of Richard Randolph as executor, was filed by the administrator as a claim against the insolvent estate of the said Richard. Said Clark, as the administrator of Richard Randolph's estate, took possession of the lands which said Richard had obtained under his contract and agreement with Spedden, and rented them out as the property of said Richard's estate; and in his answer to the bill he admitted that he was holding the lands for the benefit of that estate, and refused to account for the lands or the rents as the property of Jane Randolph's estate.

The cause having been brought to issue as to all the parties, "and submitted for argument and decree in vacation," the chan-

[Moore v. Randolph's Adm'r.]

cellor made a decretal order, holding that there was a lien on the lands for the unpaid purchase-money, which might be enforced in this suit, and ordering a reference to the register to ascertain the amount due; and the register reported that the amount due, with interest, was $46,365.66; "in which report," he stated, "all parties concur, and, waiving time, consent that the same may be confirmed, and a decree rendered thereon at once." The report was confirmed without objection, and the chancellor rendered a decree in September, 1872, directing the register to sell the lands, after due advertisement, "and bring the money into court for distribution among the heirs of said Jane Randolph in conformity to the provisions of her will." The lands were sold by the register, under this order, the complainants in the bill becoming the purchasers; and he reported the sale to the court on the 28th October, 1872, and the payment of the purchase-money into his hands, amounting to $8,048.20.

In December, 1872, a petition was filed in the cause by J. B. & T. C. Clark, solicitors and attorneys, asking an allowance out of this fund for their professional services as solicitors for the administrator, T. C. Clark, in the defense of this suit, and also for their services in the actions at law against Spedden and R. C. Randolph, on the notes for the purchase-money; and in defending a bill in equity which Spedden had filed, seeking a rescission of his contract, and which had been dismissed. At the ensuing December term, the register's report of the sale was confirmed, and he was ordered to pay over the moneys in his hands to said Clark as administrator. At the same term, on the petition of said J. B. & T. C. Clark, it was "ordered by the court, that the register ascertain and report what would be a reasonable compensation for the counsel of the administrator of Jane Randolph, deceased;" and at the same time another decretal order was made, as follows: "On motion of Thomas C. Clark, administrator *de bonis non* with the will annexed of Jane Randolph, deceased, one of the defendants in this cause, it is ordered, that this court will take jurisdiction of the administration of said estate, and that the same is hereby removed from the Probate Court of Greene county, and that said administrator present and file his accounts and vouchers," &c.

Under the reference as to the petition of J. B. & T. C. Clark, the register reported, that $270 was reasonable compensation for their services in the suit against Spedden, on which no judgment was recovered; $306, for their services in the suit against R. C. Randolph; $500, for their services in defending the chancery suit instituted by Spedden; and $1,000, for their services in this suit. And he further reported: "On said reference, the complainants' solicitor objected to the amount of said

[Moore v. Randolph's Adm'r.]

fees, but without introducing any evidence to show that they were not reasonable or proper. He objected particularly to the fee in the Circuit Court of Perry, and introduced James E. Webb as a witness, who testified, that said R. Spedden, at the time of the commencement of said suit against him, had personal property to the amount of about $1,500, and the said lands so purchased by him; that he knew of no other debts against him except said notes given for said lands, and, taking into consideration the amount due on said notes, that said Spedden was then insolvent. Said Clark moved to exclude said evidence, and his motion was sustained; to which the complainants excepted. Complainants' solicitors then proposed to prove that, at the time of the institution of said suits, said Spedden was totally insolvent, and no money could be made by execution out of any of said defendants; which evidence was excluded, on motion of said Clark, and the complainants excepted."

The chancellor sustained the complainants' exceptions to the report, and ordered a re-reference. Under this second reference, the register reported $500, as reasonable compensation for services in the two actions at law; $500, for defending the chancery suit instituted by Spedden, and $500 for services in this suit; and he submitted the evidence on which his conclusions were founded. The complainants filed with the register written exceptions to his report; and exceptions were also reserved by Clark, because the register allowed only $500, instead of $1,000, as compensation for his solicitors (J. B. & T. C. Clark) in this cause. The chancellor overruled all the exceptions, and confirmed the report.

On the settlement, before the register, of Clark's accounts as administrator of Jane Randolph's estate, the complainants moved to charge him with the rents of the lands which Richard Randolph had obtained from Spedden, and of which Clark took possession as the administrator of Richard Randolph's estate; and the register so charged him, against his objection and exceptions. But the chancellor sustained his exceptions to this ruling, and held that he was not chargeable with these rents. On the statement of Clark's accounts by the register, for a final settlement, he was allowed five per cent. of the net proceeds of the sale of the lands by the register, amounting to $379.88; "to which allowance the complainants, by their solicitors, objected, and excepted to the overruling of their objection." The chancellor overruled these exceptions, and confirmed the register's report.

·The appeal is sued out by the complainants, and they here make twenty-eight assignments of error, among which are the following: 1st, the decretal order removing the administration of the estate from the Probate Court; 2d, the decree allowing

[Moore v. Randolph's Adm'r.]

counsel fees to the administrator for services in the actions at law, and also the allowance for services in this case; 3d, the allowance of commissions to the administrator on the proceeds of sale of the lands; 4th, the refusal to charge the administrator with the rents of the lands, as assets of Jane Randolph's estate; and various other rulings which require no special notice.

Thos. R. Roulhac, and R. H. & G. L. Smith, for appellants.

Thos. H. Watts, Jas. E. Webb, and Coleman & Clark, contra.

STONE, J.—Thomas C. Clark became administrator de bonis non of Jane Randolph's estate, in March, 1868. She had left a will, appointing Richard Randolph to be executor thereof; who qualified, and made partial administration of her estate, but died before his administration was completed and ready for settlement. He was brother of the testatrix, and of the beneficiaries who took chiefly under the will. The events of the war, and perhaps some looseness of administration, had left the executor's accounts, and the affairs of the estate, somewhat complicated, and difficult of adjustment. The personal assets appear to have been entirely disposed of, in the payment of debts, in the payment of pecuniary legacies, and in partial, but unequal distribution. One pecuniary legacy remained unpaid, to meet which there had been ample personal assets, not specifically bequeathed. These personal assets, however, after the payment of debts, had been disposed of in partial distribution to the residuary legatees; and the executor's sureties, and his own estate, were insolvent.

By the 9th clause of the will, a large landed estate, and all the residuum of testatrix's property, real and personal, not thereinbefore bequeathed and devised, were given, "to be divided equally, share and share alike," between her brothers and sisters named, five in number. In May, 1863, the executor, Richard Randolph, filed a petition in the Probate Court, averring that said lands could not be equally divided among the devisees, share and share alike, and praying for an order to sell the same for division. The petition does not set forth that the will contains no power of sale. In September, 1863, the Probate Court granted the order of sale, as prayed for, and directed the sale to be made on one, two and three years' time, with interest from day of sale. In making the order, the court recited that ".the case was submitted on the testimony of F. F. Hill, H. P. Cox, and B. Avery." There were minors interested in the estate, and the order fails to show that the proof was made

by the depositions of disinterested witnesses, taken as in chancery proceedings.—Code of 1876, §§ 2449, 2457, 2458.

The sale was made, October 24, 1863, and the lands were bid off by two purchasers; one Spedden being the purchaser of 1,377 acres, at $19.50 per acre ; and R. C. Randolph, one of the said five devisees, purchasing the residue, 876 acres, at $17.00 per acre. Three notes were given by Spedden, each for the sum of $8,950.50, payable to Richard Randolph, executor; and the said Richard Randolph became one of the sureties on these three notes, payable to himself. R. C. Randolph, also, gave his three notes with surety, each for the sum of $4,964. The sale was reported to the Probate Court, and confirmed. Before the sale, it had been agreed, that Spedden should bid off the land he did purchase, and that he should let Richard Randolph, the executor, have a part, 660 acres, at the price he himself should give. This agreement was carried out, and Randolph gave Spedden his purchase-money notes, and Spedden gave him a bond to make him title. A similar agreement had been made with one Curry, as to a part of the land, and had been carried into effect; but the present case raises no question on that sub-sale. Spedden, Richard Randolph, and Curry, severally took possession, pursuant to their several purchases, and had not been disturbed in their possession, when Clark became administrator, in 1868. No question is here raised on the R. C. Randolph purchase.

The widow of Richard Randolph was the executrix of his will. Shortly after Clark's appointment as administrator *de bonis non* of Jane Randolph's estate, Mrs. Randolph resigned the trust of her husband's estate, and T. C. Clark was appointed administrator *de bonis non* of that estate also. Mrs. Randolph, however, at the time of, or soon after her resignation, settled the executorship of her husband on the estate of Jane Randolph ; and a balance was found and decreed against her, as such executrix, of some $1,290. During the administration of Richard Randolph, he had collected in Confederate treasury-notes one each of the purchase-money notes of Spedden and R. C. Randolph, and made a partial collection on a second of the Spedden notes. The two purchase-money notes, each, given respectively by Spedden and R. C. Randolph, and the decree against Mrs. Randolph, executrix of Richard Randolph, mentioned above, constituted the entire assets of Jane Randolph's estate, which went into the hands of Clark as administrator *de bonis non* of Jane Randolph. The lands mentioned above, 660 acres, of which Richard Randolph took possession under his agreement with Spedden, Clark took possession of, as administrator *de bonis non* of Richard's estate, and gave that estate the benefit of the rents for some four years—say, from 1868, until

1872. Soon after his appointment, Clark reported the estate of Richard Randolph insolvent, and it was so decreed and declared by the Probate Court. The prices at which the lands were sold by Richard Randolph in 1863, contrasted with the prices they subsequently brought, when re-sold after the war—about five to one—would indicate that the former sale was made on a basis of Confederate values.

It was contended in the court below, that inasmuch as Clark was administrator of each of the estates of Jane Randolph and Richard Randolph, and was in possession of the lands bought by Richard, and in receipt of the rents, he should account for those rents as assets of Jane's estate; and having failed to do so, by accounting for them as of Richard's estate, he should be made to account for them as for a *devastavit*. We may concede that, under ordinary circumstances, this should be the case; but, circumstanced as this administration and administrator were, we think there is not enough to justify us in holding Clark to account for not bringing those rents into the administration of Jane Randolph's estate. Administrators, acting in good faith, are bound to bring to the service that degree of skill and diligence, which an ordinarily prudent man bestows on his own similar private affairs; nothing more.—*Gould v. Hayes*, 19 Ala. 438; *Henderson v. Simmons*, 33 Ala. 291; *Lyon v. Foscue*, 60 Ala. 468; *Baldwin v. Hatchett*, 56 Ala. 561; *Hutchinson v. Owen*, 59 Ala. 326. When Clark took this administration upon himself, we had but recently emerged from the convulsions of a gigantic civil war. We had been conquered, and our political *status* was not well defined, or understood. In what light our judicial action during the war should be viewed, was much discussed, and was the subject of much contrariety of opinon. Able attorneys were found, who maintained that the courts which exercised authority during that troublous time were sheer usurpations, and their decrees nullities. Even this court, as for a time constituted, held that judgments of courts of this State, rendered during the war, stood on no higher ground than foreign judgments, and constituted mere causes of action, enforceable only by the law of comity in actions brought for the purpose.—*Martin v. Hewitt*, 44 Ala. 418; *Bibb v. Avery*, 45 Ala. 691; *Griffin v. Ryland*, *Ib.* 688.

To render Mr. Clark's pathway still more obscure, the order of the Probate Court under which his predecessor had sold the lands, was, on its face, of questionable validity, if not void. *Satcher v. Satcher*, 41 Ala. 39; *Pettus v. McClannahan*, 52 Ala. 55. If the sale was void, then the estate of Jane Randolph could assert no lien on the land for unpaid purchase-money. Richard Randolph was one of five devisees of the land, and, as such, was entitled to an equal possession with the

other devisees. It is no answer to this, that the devisees in interest have since ratified that sale, and thus legalized it. At the time when it is alleged Clark committed the *devastavit*, the sale had not been ratified. So far from this being the case, the original bill filed in this cause assailed the decree of sale as void, and prayed to have it so declared. It was only•by an amendment to the bill that the complainants ratified the sale, and prayed to have the lien for the purchase-money enforced. It is shown that, during his entire administration, Clark, the administrator, acted under and in accordance with experienced and able counsel, and there is nothing in the record to show bad faith on his part. We think the chancellor did not err in his ruling on this question.

Neither do we think the administrator betrayed a want of proper prudence or diligence in bringing the suits at law against R. C. Randolph and Spedden. Many reasons may be given for this. It may have been regarded as the simplest and most expeditious means of obtaining a judicial determination of the questioned validity of the land sale. It was probably believed that at least something could be realized on the judgment, when recovered. It may have been desirable to have the claim put in judgment for many conceivable reasons, which will readily suggest themselves to the legal mind. There is not enough in this record to enable us to affirm that the administrator is not entitled to his reasonable attorney's fees for this service.

It is contended for appellant that, because Richard Randolph was both payor and payee of the notes given in the Spedden purchase, no judgment at law could have been rendered on these notes, and that it was either gross ignorance, or gross negligence, to bring the suits. He was payee in his representative capacity, and payor in his individual capacity. When he ceased to be the personal representative of Jane Randolph's estate, he ceased to have any right to the note or its proceeds. The right to the note and its collection vested in Clark, when he was appointed administrator *de bonis non*. - *Harbin v. Levi*, 6 Ala. 399. We are not prepared to say the suit by Clark, administrator *de bonis non*, against Spedden, on these notes, should not have been maintained.—*Lacy v. LeBruce*, 6 Ala. 904; *Willis v. Neal*, 39 Ala. 464. The fact that plaintiff acquiesced in the ruling against him, and did not appeal to this court, by itself, proves nothing. He may have become convinced that a judgment at law was not necessary, or would be unproductive; or, he may have concluded the judgment he recovered against Spedden on the R. C. Randolph notes, would exhaust all the property he had. But we need not decide whether or not this suit should, or could have been maintained.

It was not so clearly settled that the defense was good, as to convict counsel of gross ignorance, or gross negligence, in bringing the suit.—*Goodman v. Walker*, 29 Ala. 444. The administrator was entitled to reasonable compensation for bringing the suit.

It is objected that Clark, the administrator, should have had no allowance, or a smaller allowance, for defending the present suit. We think, under the circumstances shown in the record, about one-half of an ordinary fee for defending such suit should have been allowed the administrator in his settlement. *Holman v. Sims*, 39 Ala. 709; *Smith v. Kennard*, 38 Ala. 695. The allowance in this case was about one-half of what the witnesses testified was reasonable compensation for the service. The register seems to have taken a view of the case which led to the same result, and we are not inclined to disturb his finding.

On a single question we differ with the chancellor. The present suit was against the administrator, and the land was ordered to be sold, and was sold, not in obedience to any proceeding or prayer instituted or preferred by him. He had nothing to do with the sale or conveyance, and, under the facts of this case, nothing to do with the distribution of the proceeds. Under the circumstances disclosed in this record, the administrator was entitled to no commissions on that fund. This makes a difference in the allowance to the administrator on final account, rendered and stated May 18th, 1874, and confirmed by the chancellor June 24th, 1874, of $379.88. The excess of expenditures over receipts, as stated and allowed on that settlement, should have been $122.85, instead of $502.73-100, as reported and confirmed. On this sum the administrator is entitled to interest, from the date of the report. In all other respects, the decree of the chancellor is affirmed, and will be executed in the court below for the modified sum of $122.85, with interest, as the decree for the larger sum was ordered to be executed.

It has been objected before us, that the complainants did not except in the court below to the allowance of the item of commissions, which we have declared should not have been allowed. This objection applies only to the corrected report, which was made in precise accordance with the directions of the chancellor. This item of allowance was embraced in the original report, was then excepted to by complainants, and the exception overruled by the chancellor, who thereupon re-referred the account, with instructions to the register to correct and report it according to rules laid down by him. It does not appear that these instructions were, in any respect, disobeyed by the register. A further exception to the report, on grounds once

[Willingham v. Long.]

considered and overruled by the chancellor, was unnecessary, and would possibly have been regarded as disrespectful. *Harbin v. Bell*, 54 Ala. 389.

The form in which the exceptions were taken and noted in this case, is somewhat open to criticism. They appear to have been taken before the register, and only noted by him in his report. They are, however, very distinctly and specifically taken and noted. A correct practice requires they should have been prepared by counsel, signed by him, and filed in the Chancery Court, as a separate paper in the cause. This was not done by either party, so far as the record discloses the action of the court on this account. The chancellor passed on the exceptions, sustained some, and overruled others; and no objection was taken to their informal presentation, either by the court or counsel. Had the objection been taken then, the informality could, and doubtless would have been healed. The point not being raised in the court below, we will not consider it here. It should be noted, this case is governed by Rules 88 and ⋏9 of Chancery Practice, as found in the Revised Code, and not by the later Rule 93, in the Code of 1876.

The bill in this case, as amended, prayed the removal of the administration into the Chancery Court, and the complainants —appellants here—can not be heard to complain that their prayer was granted. It was a proper case for chancery jurisdiction, and no steps having been taken in the Probate Court, looking to a settlement, the legatees under the will could have the settlement removed into the Chancery Court, without assigning any special reason therefor.

Reversed on the single point stated above, and here rendered, correcting the register's report, so as to show the excess of disbursements by the administrator, over receipts by him, was $122.85, and confirming the report as thus corrected. The Chancery Court will proceed to enforce the decree as thus amended, to close the settlement of Clark's administration, and make all necessary orders to that end.