# Eubank *v.* Clark.

*Final Settlement by Administrator of Insolvent Estate.*

1. *Insolvent estate; parties to settlement; rights of distributees.*—When a decedent's estate has been declared insolvent, the administrator and the creditors are the only necessary parties to the subsequent proceedings and settlements; but, if the estate proves to be in fact solvent, either by the failure of creditors to file their claims, or by the rejection of the claims filed, the surplus remaining belongs to the distributees, and they have the right to appear, on the final settlement of the administrator's accounts, for the purpose of establishing the fact and amount of such surplus; nor are they precluded by any former decrees or proceedings, to which they were not parties, from surcharging the administrator's accounts, or showing unauthorized expenditures made by him.

2. *Settlement of accounts of deceased administrator; duty of successor to compel, and liability for default.*—On the death of an administrator without having made a settlement of his accounts, his successor in the administration may compel a settlement thereof by his personal representative, and recover a decree for assets converted, wasted or misapplied by the deceased administrator (Code, §§ 2537-40); which statutory right carries with it a corresponding duty, both to the creditors and to the distributees of the estate, each of whom he represents on such settlement; and he is liable to them for the neglect of this duty, or for any loss resulting from the want of proper diligence in its performance.

3. *Same.*—If the administrator *de bonis non* fails to compel a settlement of the accounts of the deceased administrator, and the distributees

[Eubank v. Clark.]

of the estate seek to charge him, on settlement of his accounts, with an alleged *devastavit* of the deceased administrator, the *onus* is on them to show the fact and amount of such *devastavit*, and that it could have been recovered by the exercise of reasonable diligence on the part of the administrator *de bonis non ;* and the ascertainment of this involves, practically, a settlement of the accounts of the deceased administrator, which should be made on the same principles as a regular settlement by his personal representative.

4. *Objections by distributees to claims filed against insolvent estate.*—The right to file objections to claims against insolvent estates has been extended by statute approved December 4th, 1878 (Sess. Acts 1878-9, p. 69), to heirs and distributees, legatees and distributees; but the statute does not operate retroactively on estates which had been declared insolvent more than twelve months before its passage, nor authorize the distributees, on subsequent settlement with the administrator, to raise objections to claims which were properly filed and verified, and to which no objections were filed within the time allowed.

5. *Renting lands by administrator, and liability for rents.*—When an administrator, in the exercise of his statutory authority, rents out the lands of the estate (Code, § 2446), he is required to secure the payment of the rent by "bonds or notes with two good and sufficient sureties;" by which is meant, not men of good character or reputation for honesty, but men having property out of which payment may be compelled by legal process; and for the neglect of this duty—whether by taking only one surety, or by taking a surety who is known by him not to be good and sufficient, or whose sufficiency he has not good reason to believe—he is liable to the parties beneficially interested in the estate, if loss to them is thereby caused; though he is not held to infallibility, and is only required to exercise the care and diligence which a prudent man would, under similar circumstances, exercise in his own business.

6. *Liability of administrator for interest.*—An administrator is, *prima facie*, chargeable with interest, unless he makes the exculpatory affidavit prescribed by the statute (Code, § 2520); and even when he makes this affidavit, and it is not controverted, he will be charged with interest, if there has been any unreasonable and unnecessary delay on his part in making settlement and distribution, as determined by the circumstances of each particular case.

7. *Same.*—In this case, the personal property of the estate having been sold in August, 1867, on a credit of twelve months, and the estate declared insolvent in July, 1868; it was held that the administrator, on final settlement of his accounts at the instance of the distributees, never having made a final settlement with the creditors, should be charged with interest from the 1st January, 1870, in the absence of evidence showing any reason for delay in distribution, although no days were fixed by the court for distribution among creditors.

8. *Liability for interest on rents.*—For rents collected by an administrator, or chargeable against him on settlement, he should not be charged with interest from the day on which they accrued, since, if punctually paid on that day, time would elapse before they could be distributed under the decree of the court; and where the amounts collected are small, compared with the necessary costs and expenses of a settlement and distribution under the decree of the court, this would excuse a reasonable delay until the aggregate collections could be distributed without unnecessary costs and expenses, the statutory affidavit being made, and no bad faith imputed to the administrator.

9. *Duty of administrator in defending against claims, and liability for default.*—It is the duty of the administrator of a solvent estate to defend it against claims presented, when he knows, or has just reason to believe, that they are unfounded and unjust; and the insolvency of the estate does not relieve him from liability to the distributees for a loss

[Eubank v. Clark.]

resulting from the neglect of this duty, although he may not be liable to the creditors, if, having knowledge of the facts, they also failed to file objections; but, the measure of his liability to the distributees being the loss which they have sustained by his neglect of duty, if no surplus remains after rejecting the unjust claims, they can recover nothing.

10. *Crops planted by decedent, and gathered by administrator; medical services for slaves.*—If the decedent was engaged in planting at the time of his death, his personal representative was authorized to complete and gather the crop which had been planted (Code, §§ 2439–41), and to keep the estate together during the year; and on settlement of his accounts, he is chargeable with the proceeds of the crops raised, and entitled to a credit for the reasonable expenses of the plantation, including medical services to the slaves; but not for medical services to them during subsequent years, in the absence of evidence showing that it was his duty to furnish medical services to them.

11. *Form of decree on settlement of administrator's accounts.*—On final settlement of the accounts of the administrator of an insolvent estate, at the instance of the distributees, it is irregular to render decrees in favor of creditors, for the use of the administrator, for the amount paid to each, and for the surplus in favor of the distributees.

12. *Same; purchase of claims by administrator.*—If the creditors have not been paid in full, no decree for a surplus in the hands of the administrator can be rendered in favor of the distributees; but, if the administrator has purchased the claims of creditors, or has settled them in full for less than the amount due, he is only entitled to a credit for the amount paid, with interest, and the surplus must be decreed to the distributees.

13. *General administrator; expiration of office, and settlement.*—The office of a general administrator expires with the expiration of the term of office of the judge by whom he was appointed, unless he is continued in office by the succeeding judge (Code, § 2362); and when his office has thus expired by limitation, and he has made a final settlement of an estate committed to him, he can no longer claim or exercise any of the powers of an administrator, though no successor has been appointed in his stead.

APPEAL from the Probate Court of Greene.

Heard before the Hon. W. C. OLIVER.

In the matter of the final settlement of the accounts of Thomas C. Clark, as administrator *de bonis non* of the insolvent estate of John M. Eubank, deceased. Said Eubank died in February, 1861, leaving a widow and several children, and possessed of a tract of land, on which he resided, and about twenty slaves. Letters of administration on his estate were duly granted by the Probate Court of said county, in April, 1861, to the widow, Mrs. Susan V. Eubank, who thereupon gave bond, with Wm. H. Knott and Thomas W. Sims as her sureties, and entered on the duties of the administration; and she died in March, 1866, never having made any settlement of her administration. On the 12th March, 1866, letters of administration *de bonis non* were granted to Thomas C. Clark, as general administrator of the county. In August, 1867, the personal property belonging to the estate was sold by said administrator, under an order of court, on a credit of twelve months; and he charged himself, in his account-current filed

[Eubank v. Clark.]

for settlement, with $1,124, as the amount realized from the sale. On the 8th June, 1868, the administrator reported the estate insolvent; and it was declared insolvent by the court, without any contest, by a decree rendered on the 13th July, 1868. At the same time, the second Monday in August, 1868, was appointed as the day for a settlement of the accounts of the administrator, and the election of an administrator by the creditors, who were also notified to file their claims; but no settlement was made on that day, nor was any other order made in relation to the estate, so far as the record shows, until November 3d, 1880, when said Clark filed his resignation, and with it his accounts and vouchers for a final settlement, alleging that there was nothing in his hands for distribution—that he had distributed among the creditors all the assets he had ever received, and that the lands had been allotted to the children as their homestead.

Thereupon, the children of the decedent filed their petition, alleging that the estate was in fact solvent, and there was a surplus in the hands of the administrator for distribution ; and asking that they be made parties as distributees, and be allowed to contest the correctness of the administrator's account-current. The administrator, who appeared in person and by attorney, and also "as surviving partner of the late firm of J. B. & T. C. Clark, attorneys at law, representing the creditors," denied the right of the distributees to intervene, "alleging that the lands of the estate were set apart to the children, on their petition, in July, 1876, alleging the insolvency of the estate; which lands had been rented out annually from the declaration of insolvency in 1868, and was all the estate for distribution, except the sale-bill of personal property, after deducting disbursements made by him for the estate; and that in January, 1877, he had stated an account, and made a settlement with the creditors out of court, and had paid them the estimated amount their claims were entitled to, and taken their receipts for the amounts paid them. But the court ruled, that no notice could be taken of said settlement out of court, and overruled the said objections of the administrator and creditors, and allowed said heirs to be made parties for any and all purposes; to which ruling the administrator and creditors excepted." The court then proceeded with the settlement, each party reserving exceptions to rulings adverse to them.

The distributees sought to charge the administrator with a *devastavit*, because of his failure to compel a settlement of the accounts of Mrs. Eubank as administratrix in chief, by showing that she was in default to the estate on account of crops raised and sold, hire of slaves, assets collected and not accounted for, and that her sureties continued solvent for several years after

her death ; and they submitted several motions in relation to these matters, and asked the court to state an account of the administration of Mrs. Eubank, and to charge the administrator with the amount which might be thus ascertained to be due from her to the estate. The court overruled and refused each of these motions, on objection by the administrator, and the distributees excepted.

. The distributees objected to the allowance of several claims, on which payments had been made by the administrator, and which he presented as vouchers, and filed written objections to their allowance ; but the court overruled the objections, because they were not filed within the time prescribed ·by law, and the distributees excepted. Among the claims thus objected to were several accounts in favor of Dr. H. B. Robinson, for medicines and medical services furnished to the family and slaves of the deceased, during the year 1861, 1862 and 1863, and an account for $87.50, as the price of seven bushels of salt on the 1st of August, 1863. The court having overruled the objections to the allowance of these claims as vouchers, the distributees then moved to charge the administrator with the amounts allowed on each of the claims, as for a *devastavit*, because they were not proper charges against the estate, and he was guilty of negligence in not filing objections to their allowance. The court sustained this motion, and the administrator excepted.

The administrator made the statutory affidavit as to the use of the funds of the estate (Code, § 2520), and the affidavit was not contested ; but the distributees moved to charge him with interest, notwithstanding the affidavit, on the ground that he was guilty of negligence and unreasonable delay in making settlement and distribution. On the evidence adduced on this point, the court charged the administrator with interest from the 1st of January, 1870, on the moneys collected by him before that time ; to which ruling the administrator reserved an exception. Exceptions were also reserved by both parties to the rulings of the court on the allowance of counsel fees and commissions ; but these exceptions, not being considered by this court, require no notice.

The administrator had rented out the lands of the estate for the year 1867, at the agreed rent of $760, taking the note of Andrew Logan, John H. Hord and H. McMillan for the rent, which stated on its face that a statutory lien on the crops was reserved ; but he collected only $100 of the rent, and charged himself with that sum only. The distributees moved to charge him with $660, the uncollected balance, with interest thereon from the 1st of January, 1868, on the ground that it was lost to the estate by his *laches*. As to this matter, the evidence in-

troduced showed, in substance, that Hord and McMillan, the two sureties on the note, were men of good repute for honesty, but that Hord owned very little (if any) property, and McMillan but little above his legal exemptions; and the administrator himself testified, against the objection of the distributees, that the crops were damaged and swept away by an overflow of the river, and his statutory lien and remedy were thereby rendered worthless. On the evidence adduced, the court refused to charge the administrator with the amount, and the distributees excepted.

The administrator also rented out the lands during several other years, and collected about $500, for the rents of 1874 and 1875, by suing out an attachment against the crops; and he asked a credit for $40, as amount . of fees paid his firm for services in suing out the attachment. The distributees objected to the allowance of this voucher, offering to show that the administrator had taken only one surety on the note for the rent, and insisting that he thereby rendered himself liable for any loss that might ensue, and could not charge the estate with attorney's fees in trying to collect the debt. The court, on motion of the administrator, rejected the evidence, and overruled the motion of the distributees; to which ruling they duly excepted.

Wm. H. Knott, one of the sureties on the official bond of Mrs. Eubank as administratrix in chief, died in August, 1868, leaving a considerable estate; and in November, 1868, letters of administration on his estate were granted to said Thomas C. Clark, as the general administrator of the county. Clark was appointed general administrator on the 5th of November, 1868, by the probate judge then in office; and on the 26th November, 1874, one John R. Taylor was appointed general administrator by the succeeding judge of probate. In January, 1876, Clark made a final settlement of his administration of Knott's estate, and accounted for the assets which he had received and distributed; but he did not resign, nor was any successor in the administration appointed. Said Knott became surety for said Eubank in his life-time, on a promissory note payable to the administrator of one Dallas; and this note was duly presented and filed as a claim against said Eubank's estate, both before and after the declaration of insolvency. A judgment was afterwards recovered on the note, which was paid by Clark, as administrator of Knott's estate, and again filed by him as a claim against said Eubank's estate, as shown by the following memorandum, indorsed on it by the probate judge: "This claim (No. 8) of F. B. Dallas, administrator, filed against the insolvent estate of J. M. Eubank, having been paid by T. C. Clark, administrator of estate of W. H. Knott, deceased, on a

judgment of the Circuit Court of Greene county, debt $770, and costs $23.30, the administrator of Eubank withdraws his objections, and refiles, or files the same, for said amount paid, as a claim in favor of the estate of W. H. Knott." It was shown that this claim was not included in said Clark's settlement of his administration of Knott's estate; and the court, holding that Clark was no longer the administrator of said Knott's estate, appointed an administrator *ad litem* to represent said estate, and rendered a decree in his favor for the pro-rata share of the assets to which the claim was entitled, to be by him paid over to an administrator *de bonis non* when appointed. Clark insisted on his right to retain the money allotted to this claim, as administrator of said Knott's estate; and, this motion being overruled by the court, he asked that no execution be issued in favor of the administrator *ad litem*, but that he be directed to charge himself as administrator of Knott's estate with the amount so decreed against him. The court overruled and refused this motion also, and rendered a decree as above stated; to which ruling and decree the administrator excepted, individually, and as surviving partner of the legal firm who, as attorneys, filed the claim in favor of Knott's estate.

On the statement of the account by the court, a balance of $4,493.85 was found against the administrator, as the amount of assets with which he was chargeable, and the court proceeded to decree distribution of this sum among the parties entitled. The distributees insisted that nothing should be distributed among the several creditors whose claims had been allowed, on the ground that the administrator had settled with them, and taken their receipts in full discharge of their claims; and they contended that whatever profit resulted from the transaction enured to the benefit of the estate, and of themselves as distributees. It was shown that, on the 1st January, 1877, the administrator had distributed among the several creditors the sum of $1,445 then in his hands, which was about fifty-three per cent. of their claims, taking their respective receipts; and one of these receipts was produced, which was signed by Tyree & Co., and in these words: "The lands belonging to the insolvent estate of John M. Eubank having been set apart to the children as a homestead, and the same being all the estate, Thos. C. Clark, the administrator, has paid me the sum of $186, the estimated amount due as a distribution on my claim above stated. This is to be a full settlement of said claim, unless the lands shall revert to the estate after the youngest one of said Eubank's children shall arrive at the age of twenty-one years; in which event, I am to have my *pro-rata* share of whatever may arise from a sale of said lands." The other receipts, as the administrator testified, were in similar form. After hear-

ing all the evidence, the court rendered a decree in favor of each creditor, for the use of the administrator, for "the amount paid by him on the 1st January, 1877, in satisfaction of said claim," with interest thereon up to the day of the settlement; and a balance of $217.25 being left in the administrator's hands, it was decreed to the distributees.

Each of the parties appeals from this decree, and each assigns as error all the adverse rulings of the court.

THOS. SEAY, and E. W. DEGRAFFENREID, for the distributees.

THOS. R. ROULHAC, and THOS. W. COLEMAN, for the administrator and the creditors.

CLOPTON, J.—1. Special statutory provisions for the declaration and settlement of insolvent estates, constituting an entire and complete system, have been enacted, which seem to indicate that the administrator and creditors are the only necessary parties to such declaration and subsequent settlements, on the presumption that the heirs and distributees have no further interest. If, however, the estate proves solvent, because of the rejection of claims filed, or of the failure of creditors to file their claims, and a surplus remains, after satisfying the claims filed and allowed, it can not be applied in payment of debts not filed in proper time, but passes to the distributees. In order to show that a surplus remains for distribution, the distributees have the right to appear on the settlement of the administrator and make objection to his account, by surcharging it, or on account of unauthorized expenditures, which they are not precluded from making, by any antecedent proceedings and decrees of the court.

2. At common law, the authority of an administrator *de bonis non* extends only to such property as remains in *specie*, or unadministered. He is not authorized to have an account for assets converted, wasted or misapplied by the administrator in chief. Only creditors or distributees can maintain a suit against a former representative, for an account and settlement of assets wasted or misapplied. The rule of the common law was abrogated by the act of 1846, and by the act of February, 1858, the provisions of which are embodied in sections 2537 to 2540, inclusive, of the Code of 1876. It is provided, that upon the death of an administrator, without having made final settlement, his personal representative must file the account and vouchers, and make final settlement of his administration; to which settlement the administrator *de bonis non* must be made a party, and a decree must be rendered in his favor, for the amount found due by the deceased administrator, or for the

[Eubank v. Clark.]

delivery of any personal property in his hands. On such settlement, the administrator *de bonis non* represents the estate, and the creditors and distributees, who can claim nothing, as to the personal property, except through him, when the estate requires further administration.

It will not be controverted, that, by the common law, it is the duty of the administrator *de bonis non* to obtain possession of all the assets of the estate that remained in *specie*, and, for this purpose, to exercise due diligence, and, if necessary, resort to appropriate legal proceedings. If he failed to reduce them to possession, and the estate sustained loss by reason of his negligence, he is liable therefor.— *Wilkinson v. Hunter*, 37 Ala. 268. The statutes do not change or modify the duties and obligations of an administrator *de bonis non*, but enlarge the kinds and character of the assets which he is entitled to receive and recover.

The statutory grant of authority to recover against the former administrator, for assets converted, wasted, or misapplied, carries with it the correlative duty to use proper diligence to recover, and to protect the estate against loss. Armed by law with the authority to obtain a decree for the amount due by his predecessor, and being the only person in whose favor a decree can be rendered, he is charged with the primary duty of its recovery. In *Glenn v. Billingslea*, 64 Ala. 345, it was held: " The administrator *de bonis non* has the right, and it is his duty, to reduce to his possession all the assets of the estate, whether changed in form or not, which the former administrator has not disbursed in due course of administration ; with the exception, that the outgone administrator may retain assets in his hands, to repay himself for any excess of disbursements he may have rightfully made."— *Waring v. Lewis*, 53 Ala. 615.

3. The distributees moved to charge the administrator *de bonis non* with the amount of an alleged *devastavit* of the administratrix in chief. It seems that no effort was made to have a settlement, or to recover the amount, if any, due by her for assets not properly and legally disbursed. If there was an amount due, which was lost by his negligence, he is liable therefor. It is the right of the distributees to have an investigation and adjudication, whether she was guilty of a *devastavit* ; and, if so, to what amount, and whether it could have been recovered by the administrator *de bonis non*, by the use of reasonable diligence. The burden of showing both the amount due, and that it could have been recovered, is on the distributees. The ascertainment of the amount involves, practically, a settlement of the administration of Mrs. Eubank, which should be made on the same principles, as if her personal representative had made a regular settlement.

6

The peculiar state and condition of the country, and the depreciated currency in circulation, during the greater part of her administration, should have due consideration; being authorized to complete and gather the crops commenced by the decedent, if any, she will not be charged with the hire of the slaves for the year of his death, but with the proceeds of the crops, after deducting the expenses of the plantation; and allowances should be made for necessary and proper expenditures in boarding, clothing and educating the distributees, not to exceed the assets in her hands, and to be charged against their respective distributive shares.

4. When a claim is properly filed against an insolvent estate, and no objections are filed within twelve months after the declaration of insolvency, the allowance of the claim is a matter of right secured to the creditor by statute.—*Clark v. Knox*, 70 Ala. 607. The act of December 4th, 1878, amendatory of section 2575 of the Code of 1876, extended the right to file objections to claims to heirs at law, legatees, devisees, and distributees, which was previously conferred on the administrator and creditors only.—Acts 1878-9, p. 69. The operation of the act is not retro-active. When an estate had been declared insolvent more than twelve months before the passage of the act, the right to file objections is not secured to a distributee. The court did not err in allowing the claims which had been properly verified and filed, and to which no objections had been filed within twelve months after the declaration of insolvency.

5. The statute authorizes administrators to rent the lands of the deceased, at public auction or privately, securing the payment of the rent by bonds or notes, with two good and sufficient sureties.—Code, § 2446. Without the statute, the administrator had no authority to rent the lands. By the statute it is made his duty, whenever resort thereto is necessary to pay the debts. One good and sufficient surety does not comply with the statutory requirement. If an administrator takes two sureties for the payment of the rent, one good and sufficient, and the other not, his insufficiency being known to him, or he not having good reason to believe him sufficient, and loss is sustained by reason of the insufficiency of the one, the administrator is responsible therefor. The sufficiency meant by the statute does not repose on good character, or reputation for honesty, but on the feasibility of a compulsory collection of the amount. When an administrator takes two sureties, and has good reason to believe they are both good and sufficient— generally reputed to be good—he is not responsible, though a loss may occur. While an administrator will not be held to infallibility, the law exacts the care and diligence which a pru-

dent man would exercise in his own business of a similar character.— *Walls v. Grigsby*, 42 Ala. 473 ; *Lee v. Lee*, 61 Ala. 590 ; *Moore v. Randolph*, 71 Ala. 575 ; *Munden v. Bailey*, 71 Ala. 63.

6. The principles on which, and the circumstances under which an administrator is chargeable with interest, have been frequently and well settled. *Prima facie* he is chargeable, but may relieve himself from the charge by making the statutory affidavit. But the exculpatory oath will not relieve the administrator in every case, although it may not be successfully controverted. If there is unnecessary and unreasonable delay in making settlement and distribution of the money on hand, interest will be charged ; not on the ground that he has used the money, but as compensation to those entitled to it for the damage occasioned by the delay. What time is an unreasonable delay, depends on the circumstances of each case—on the situation and condition of the estate, the complication of its affairs, and the obstacles to an earlier settlement and distribution.—*Clark v. Knox*, 70 Ala. 607 ; *Clark v. Hughes*, 71 Ala. 163.

7. The statute requires the administrator of an insolvent estate to make a settlement of his accounts, at such time as the court may appoint, not less than nine, nor more than fifteen months, from the time the estate is declared insolvent. At such settlement, the court must decree to each creditor, whose claim has been allowed, his proportion of the moneys found due from the administrator, reserving a ratable proportion for such claims as may be contested and undecided ; and a similar settlement and distribution must be made at least every six months thereafter, at such times as the court may appoint, until the estate is finally settled and distributed.—Code, §§ 2577, 2578. These statutory provisions show, that the policy of the law is the speedy distribution of the moneys collected by the administrator ; not to suffer them to be unemployed, while interest is running on the claims against the estate. It does not appear from the record, that any times were appointed by the court for settlements by the administrator of the insolvent estate, except the second Monday in August, 1868, as the time for making the settlement required by section 2559. The estate was declared insolvent, July 13, 1868, and the personal property was sold in August, 1867, on a credit of twelve months. Twelve months are allowed for filing objections to claims, and a partial settlement and distribution could have been made within a short time thereafter. On January 1, 1870, the administrator had in hand over fourteen hundred dollars in money, and no reasons are shown why its distribution should have been longer delayed. January 1, 1870, is, under the circumstances of

this case, a reasonable time, from which to charge interest on this amount, and the rent of the land for 1867, and on any *devastavit* of the administratrix in chief, if the administrator *de bonis non* shall be held liable for either or both, on the principles above stated.

8. Interest, however, should not have been charged on the rents from the first day of January succeeding the year during which they accrued. If they were punctually paid, the administrator could not have distributed them on the same day. A settlement must be made, and distribution decreed by the court. No time was appointed by the court for a settlement; and when the amounts collected are so small, the costs and expense of a settlement may have occasioned more damage to the estate, than the loss of the interest. These considerations may have moved the administrator in delaying distribution, and as no bad faith is charged, and the exculpatory affidavit was made, January 1, 1876, appears to us to be an equitable date, from which to charge interest on the aggregate amount of the rents received after 1869. Generally, interest is calculated on the receipts and disbursements; but as the administrator distributed, January 1, 1877, among the creditors, the amount of assets admitted to be in his hands, which, though irregular, appears to have been in good faith, interest, in this case, should be charged to that date; and from the aggregate of principal and interest, the amount distributed and the proper commissions of the administrator deducted, and interest charged on the balance from that time.

The following authorities will furnish a sufficient guide for the allowance of counsel fees and commissions: *Moore v. Randolph*, 70 Ala. 575; *Munden v. Bailey*, 70 Ala. 63; *Moody v. Hemphill*, 71 Ala. 169; *Teague v. Corbitt*, 57 Ala. 529. As there will be another trial, and futher litigation, it is unnecessary for us to pass on the present allowances.

9. It is the duty of the administrator of a solvent estate, to defend claims preferred against it, which he knows, or has good reason to believe, are unjust and unfounded; and the appropriation of the assets of the estate to the payment of such claims, if in fact unfounded and illegal, is a *devastavit.—Teague v. Corbitt, supra.* The question is, whether the declaration of insolvency, and the administration of the estate as an insolvent estate, relieve the administrator from liability to the *distributees*, for failing to file objections to claims, which he knows, or has good reason to believe, or the means by proper diligence of ascertaining, to be unfounded, or which show, *prima facie*, their invalidity as claims. In *Thornton v. Moore*, 61 Ala. 347, it is said: "It is the duty of the personal representative, and the right of each creditor, to contest the allowance of any and

every claim which shall be preferred, if believed invalid; and a full and fair opportunity for an examination and contest of the claims, the statute intends to afford." To whom does the personal representative owe this duty? Certainly, and primarily, to the creditors. When a claim is filed against the estate, which he knows, or has good reason to believe, is unjust, and he informs the other creditors of its invalidity, who, upon being informed, decline to exercise their right to contest, it seems that he has performed his duty to *them*. Notwithstanding the declaration of insolvency, it is one and the same estate, represented by the administrator as an *entirety*. The creditors represent their several and distinct interests. The administrator *alone* represents the *estate*, and is the representative, not only of the creditors, but of all persons who have contingent interests. We have previously said, that any surplus which may remain, after satisfying all allowed claims, passes to the distributees, and for this reason they are proper parties to the final settlement of the administrator. They have an interest in the estate—in the rejection of all unfounded claims—to the end that a surplus may remain for distribution. If their interests are not guarded and protected by the personal representative, they are without protection. The administrator owes to the distributees a duty to contest an unjust or illegal claim filed against an insolvent estate, the same as to defend a similar claim when preferred against a solvent estate, the measure of his liability being the loss sustained by them as *distributees*. If no surplus for distribution would remain, were the invalid claim disallowed, no damage has accrued to them, as *distributees*, by its allowance.

10. The intestate died during the year 1861; and from the nature and kinds of his property, it is reasonable to infer that he was engaged in planting. The administratrix was authorized to keep the estate together during that year, and to complete and gather the crops commenced by the decedent. The proceeds of the crops, the expenses of the plantation being deducted therefrom, were assets in her hands. The claim for medical services and medicines during 1861 shows, *prima facie*, a valid claim against the estate; and the administrator should not have been charged with its proportion of the money distributed by him. The account for services of Dr. Robinson, during 1862, shows they were rendered after the expiration of the year of the death of the intestate; and the claim is not, *prima facie*, a charge against the estate.—*Pearson v. Darrington*, 32 Ala. 227. There may have been circumstances, under which it became a necessity, and was the duty of the administratrix, to furnish medical attention to the slaves; but, if such circumstances existed, they are not shown by the record. The remaining account, which is for salt, not only shows it is

not a charge against the estate, but the salt is estimated at Confederate prices. In the absence of proof, other than shown by the record, we are constrained to hold, that the administrator is chargeable with the proportion of the money distributed by him to the claims for 1862, 1863, and 1864; although, as to such parts of the claims as are for medical services and medicines furnished the family of the deceased, including the distributees, or some of them, and in consideration of the peculiar and troublous condition of the country, the motion of the distributees does not commend itself to the favorable consideration of the court.

We observe for the guidance of the court on another trial, that if the assets of the estate are insufficient to satisfy in full the claims allowed, exclusive of the claims of Dr. Robinson for the three years last mentioned, the amounts of the other claims being ascertained as we shall hereafter direct, the above charge ought not to be made. The validity of the claims was open to the creditors, they had an equal right to contest, and have no cause to complain.

11. The record contains a statement of the amounts of the allowed claims, including interest to the day of settlement. In distributing the assets, the court decreed to each creditor, for *the use of the administrator*, the sum paid by him to such creditor on January 1, 1877, on the ground that such sum was paid in full satisfaction of the claim; and distributed the surplus among the distributees. The form of the decrees is irregular; but, whether the irregularity is error without injury, we are unable to determine from the record. The difficulty arises, in part, from the fact, that the administrator also represents the creditors, as their attorney. The receipt of one of the creditors—the others being of the same tenor, names and amounts only varying—does not show a satisfaction of the claim, or an acquittance of the estate. On the face of the receipt, it purports to be in full of the personal assets, reported by the administrator to be in his hands for distribution, and which were represented as all of the estate, except the lands. If there be other assets, not then reported or known to the creditors, they are not debarred from claiming their application to the payment of their debts. If these claims still belong to the creditors, and further payments enure to their benefit, the distributees are not entitled to receive any thing, until the claims—that is, their total amounts—are satisfied in full.

12. But a trustee will not be permitted to make a profit out of the estate which he represents; and if he purchases a claim against the trust estate, or satisfies it, at less than its face value, he is entitled to be reimbursed only the amount paid by him, with interest. If it shall be made to appear that the creditors

[Eubank v. Clark.]

assert no further claim against the estate—that the claims really belong to the administrator, and further payments thereon will enure to his benefit, without liability to account to the creditors—the amounts to be allowed on the claims are the sums paid by the administrator thereon. The question to be determined by the court is, Who is the *beneficial* owner of the claim, the administrator or the creditor? And accordingly as this question is decided, the amounts of the claims must be determined.

13. The act of April 23, 1873 (Acts 1872-3, 123), which is embodied in section 2362 of the Code, provides, that the office of general administrator shall expire with the expiration of the term of the judge by whom he is appointed, unless the succeeding judge shall continue him in office. Clark, to whom, as general administrator, the estate of Knott, who was a creditor of the estate of Eubank, was committed, never resigned as general administrator, and hence can not claim the benefit of the provisions of section 2410. His term of office of general administrator expired with the expiration of the term of office of the judge who appointed him, the succeeding judge not having continued him in office. He was, thereafter, without capacity to fulfill the office of administrator, other than to make settlements of the estates committed to his charge as general administrator. This was done when he made a final settlement. An administrator *de bonis non*, who would have been authorized to receive the money, should have been appointed.—*Landford v. Dunklin*, 71 Ala. 594. It may be, that should a liability be fixed on the administrator *de bonis non*, on account of a *devastavit* committed by the administratrix in chief, the amount of such liability, Knott being a surety on her bond, may be set off, *pro tanto*, against the sum decreed to his estate; but this we do not decide, as the question does not arise, and sufficient facts are not afforded by the record.

We find no error in the rulings of the court not specially considered, and deem it unnecessary to notice them in detail. An application of the principles settled will probably be a sufficient guide on another trial.

If a surplus of personal assets should remain for distribution, the widow is entitled to a distributive share thereof, and her estate should be represented by a personal representative, or an administrator *ad litem*.

Reversed and remanded. The appellees in each appeal will pay the costs of appeal in this court, and in the Probate Court, except of the transcript, which will be divided between them.