# Clark, Adm'r, *v.* Eubank *et als.*

## *Final Settlement by Administrator of Insolvent Estate.*

1. *Liability of administrator for rents and hires during late war, 1861-65.*—On final settlement of the accounts of a deceased administrator, who kept the estate together during the late war (1861-65) without an order of court, the distributees electing to charge him with rents of the lands and the hire of the slaves, while the court will enforce the cardinal rule, which requires administrators to act in good faith, and to exercise that degree of skill and diligence which a prudent man uses in the management of his private affairs of similar nature, it will deal leniently where good faith is shown, having due regard to the disturbed condition of the country, and the difficulties and embarrassments resulting therefrom to the management and preservation of estates; and will neither compel a strict and exact accounting, nor, when the estimates of the several witnesses differ, adopt the highest value of the rents and hires as the measure of liability.

2. *Allowance of attorney's fees to administrator.*—An administrator should be allowed reasonable attorney's fees paid to counsel, when necessary for his own protection or that of the estate, as determined by the character of the services and the value of the estate; and also for services rendered on the final settlements of his accounts, except as to items which are successfully contested by the heirs and distributees; but, if he claims a credit for the entire compensation of counsel for services rendered on the settlement, when some of the items are successfully resisted by the heirs, the entire credit may be rejected.

3. *Liability of administrator for rents; to distributees and to creditors.* An administrator is chargeable with the rent of lands, which he failed to collect by reason of the insufficiency of the sureties on the note taken by him, unless it is shown that he used due diligence to ascertain their solvency and sufficiency; but, if it appears that the estate had been declared insolvent, that the creditors were present at the public renting, and informed him that the sureties were good, they can not charge him with the rents thereby lost; nor can the distributees, in such case, unless such charge creates a surplus for distribution after the debts have been paid.

APPEAL from Greene Probate Court.

Heard before the Hon. W. C. OLIVER.

. The contentions in this case arose on the final settlement of the accounts of Thomas Clark, as administrator *de bonis non* of the estate of John M. Eubank, deceased. The case has been already before this court, (78 Ala. 73), and the facts fully reported. The only new aspects presented on this appeal are the rulings of the Probate Court upon different items of the administrator's account. On final settlement the distributees moved to charge the administrator *de bonis non* with amounts claimed to have been properly chargeable to the ad-

[Clark, Adm'r, v. Eubank et als.]

ministratrix-in-chief, Mrs. Eubank, viz, rent of land and hire of slaves belonging to intestate's estate, which had been lost to the estate under circumstances that amounted, as was alleged, to a *devastavit* by Mrs. Eubank, and which could have been recovered by the administrator *de bonis non* by the exercise of proper diligence. It was shown by the evidence that John M. Eubank, had died in February, 1861, and that he had left an estate consisting of a tract of land and twenty-three slaves; that his widow, Susan V. Eubank, took charge of the lands and slaves, keeping the slaves together and farming the land, without an order of court or other lawful authority therefor, until her death in March, 1866. The distributees allege in their motion that at the time of Mrs. Eubank's death and the appointment of Thomas C. Clark as administrator *de bonis non*, the bondsmen of Mrs. Eubank were solvent and owned large estates in Greene county, sufficient to satisfy the indebtedness of the said Mrs. Eubank to said estate, and that they continued to own said estates for many years after the appointment of said Clark as administrator *de bonis non* as aforesaid; that said Clark, though he knew the extent of the liability of Mrs. Eubank to the estate, failed and neglected to enforce a settlement and collection of said liability, by which negligence great loss was sustained by these distributees. The distributees having elected to claim the rents of the land from 1861 to 1866, and the hire of the slaves from the time of Mrs. Eubank's appointment as administratrix to the emancipation of the slaves, the court, in stating the accounts, so charged Mrs. Eubank with said rents and hires, and charged said Clark with the balance thus found against the administratrix-in-chief, with interest. To this Clark excepted. The administrator asked for a credit of a fee to J. B. & T. C. Clark for preparing a petition to sell the lands of the estate, but which he did not prosecute because he became satisfied afterwards that it was not to the interest of the estate to sell. To this credit the heirs objected, and the court sustained the objection. Upon objection by the heirs the court refused to allow the administrator credit for voucher 41 for a fee of $250.00, paid Thos. W. Coleman for legal services. The court sustained the objection, stating that it would not allow for the payment of separate attorney's fees, but would consider what would be a proper allowance for attorneys when all of them had been presented, and then make an allowance in bulk. To this action of the court the administrator excepted. Other claims for attorney's fees were disallowed on the same grounds. Other questions arising on the settlement are noticed in the opinion.

J. P. McQueen and Thos. R. Roulhac, for appellant.

[Clark, Adm'r, v. Eubank et als.]

J. B. HEAD and SEAY & DeGRAFFENRIED, *contra.*

CLOPTON, J.—On the former appeal (78 Ala. 73), we held, that it was the right of the distributees to have ascertained, whether or not Mrs. Eubank, the administratix-in-chief, had committed a *devastavit*, the fact and amount to be determined on the same principles as if her personal representative had made a regular settlement; and whether the administrator *de bonis non* could have collected the amount by reasonable diligence. On motion of the distributees, the court stated an account of the administration of Mrs. Eubank, and charged the appellant with the balance ascertained to be due. The intestate died in February, 1861, and the administratrix made and gathered the crop of that year, and was properly charged with the proceeds. The administratrix, without an order of court, kept the estate together, which consisted of land, and slaves and other personal property, after 1861 until the emancipation of the slaves in 1865. The court, in stating the account, charged the rents of the land and hires of the slaves for the years succeeding 1861, the distributees having so elected.

The right to elect, and the liability to account for rents and hires, are not disputed. The controversy on this branch of the final settlement relates to the amounts charged, as not sustained by the evidence. The testimony of the several witnesses should be considered and weighed in the light of the disordered and troublous condition of the country, and the character of the circulating medium during the period of the administration. The consideration of the financial and other difficulties and embarrassments which complicated the management, and endangered the preservation of estates, the courts, while enforcing the cardinal rule, that administrators are bound to act in good faith, and are required to exercise that skill and diligence which a prudent man uses in the management of his private affairs of similar nature, have been disposed to deal leniently where good faith is shown. It is said: they " are not insurers and not expected to be infallible." *Moore v. Randolph,* 70 Ala. 575 ; *Nunn v. Nunn,* 66 Ala 35 ; *Stewart v. McMurray,* at present term. And in anticipation of the necessity of a settlement of the administration of Mrs. Eubank, it was observed in the opinion delivered on the former appeal, that, " the peculiar state and condition of the country, and the depreciated currency in circulation during the greater part of her administration, should have been considered."—*Eubank v. Clark,* 78 Ala. 73.

The concurrent testimony of the witnesses is, that the best thing Mrs. Eubank could have done was to have kept the family and slaves on the plantation, and that she did very well if

[Clark, Adm'r, v. Eubank et als.]

she supported the family and the plantation. Under the adverse circumstances of the war, she kept the estate intact, took care of the slaves, and maintained herself and children, who are the distributees. The evidence shows prudent management. This, however, did not absolve her from the duty of obtaining proper authority; and having kept the estate together without an order of court as required by the statute, the liability to account for rents and hires arises on the election of the distributees; but, under the circumstances, the accounting should not be exacting, nor, when witnesses of equal credibility and opportunities differ in their estimates, should the *highest* value proved be charged, unless it is sustained by the attendant and controlling facts and circumstances. The court adopted the highest value, as estimated in good money, by the witnesses on the part of the distributees. The circulating medium during these years of the war consisted of Confederate States treasury-notes and convertible equivalents, which constantly and rapidly depreciated until it became valueless. There was no gold or silver or United States money in circulation.—*Morris v. Morris*, 58 Ala. 443. There are no *data* on which to base a reliable opinion as to what amount a slave would have hired for, if payment in good money had been demanded. One of the witnesses testifies, that in such case, they could not have been hired at all. The witness, who made the highest estimate, also testified that having some minors' slaves to hire, he paid in 1863 sixty-five dollars for keeping a man and his wife each about thirty years of age, and hired a man, his wife and two or three children for their food and clothes or had to pay something for their keeping. The other witness on the part of the distributees said the hire for 1865 was worth nothing; and there is other evidence showing that the hire was not worth anything from 1862 to 1865 inclusive, inasmuch as they could not be profitably employed. Besides; the court not only charged the hires on the basis of the highest estimated values, but of the highest estimated value of each slave as if hired separately. The fair inference from the record is, that some of them were in families. In such cases, the proper criterion is the value, if hired as families. It was not the duty of the administratrix to separate parents and children in hiring the slaves. The foregoing observations are applicable in some respects to the rents as charged. There is evidence tending to show, that lands could not be rented, the men being in the army, and the available mules and horses having been taken by the government. The question here is, whether the administrator *de bonis non* is responsible for a loss to the estate by reason of his negligence. Upon an examination of the entire evidence, and on consideration of the state and condition of the

country, we are satisfied, that had the administrator *de bonis non* promptly compelled a settlement of the administration in chief, he could not reasonably have succeeded in recovering any amount from the sureties of the administratrix. The amount of the *devastavit*, with the interest thereon, should be stricken from the debit side of the account.

When an administrator, in good faith, procures the services of counsel for his own protection or that of the estate, he should be allowed a credit for reasonable compensation paid counsel, considered in connection with the value of the estate and the character of the services; but no allowance will be made in respect to litigation in which the administrator is at fault. If on the final settlement of the administration, he engages with the heirs in unsuccessful litigation as to items of debit or credit, the compensation should be apportioned, so as not to charge the estate with the increase of compensation in consequence of the assistance and services rendered in such unsuccessful litigation.—*Smyley v. Reese*, 53 Ala. 98; *Smith v. Kennard*, 38 Ala. 695; *Moore v. Randolph*, 70 Ala. 575. While the better practice would have been to have allowed separate compensation for the fees in defending the bill filed against the administrator by the heirs; when the value of the estate, the character and results of the litigation, and the evidence as to the value of the entire services, are considered, we are not clearly convinced that the aggregate amount allowed by the court is erroneous. The claim as presented being for a credit for the *entire* compensation of counsel for the services rendered on the final settlement, the court could properly have rejected the credit. *Smyley v. Reese, supra.*

Whether or not the administrator should be held responsible for the loss of the rent of the land for 1867, by reason of the insufficiency of the sureties on the rent note, should be considered in a double aspect—as the distributees may or may not be interested in the distribution. The evidence is not sufficient, as against the distributees, to show that the sureties were generally reputed to be solvent, or that the administrator used requisite diligence to ascertain that they were good and sufficient. But the estate had been declared insolvent, and the administrator testified, without contradiction, that several of the creditors, who only were supposed to be interested, were present at the renting, and that, in addition to inquiries of the neighbors, he inquired of the creditors, who informed him that the sureties were good, and told him to accept the note. The administrator having acted on this information in good faith, it would be unjust to charge him with the loss of the rent, in favor and for the benefit of the creditors. The distributees alone moved to charge the administrator with the uncollected

[Hairston v. Dobbs.]

amount of the rent note. If, by charging him with the amount of the rent note which he failed to collect, a surplus will remain for distribution among the heirs, he should be charged there-with ; but, if no surplus will remain, then the debit should be stricken from the account. And on the same principle, if no surplus remains, the charge for a failure to file objections to the claims of H. B. Robinson should be disallowed.—*Eubank v. Clark*, 78 Ala. 73.

We discover no error in the other rulings of the court.

The judgment is reversed, and the cause remanded, with directions to the Probate Court to restate the account in accordance with this opinion.